# THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION

## CIVIL CASE NO. 1:11cv002

ROBERT B. TAFT, JR. and )
RTB, INC., )
)
        Plaintiffs, )
)
        vs. )    **O R D E R**
)
SIEGWERK USA INC., TERRY DAVIS, )
DANIEL McDOWELL, and JAMES )
ROSS, )
)
        Defendants. )
)

**THIS MATTER** is before the Court on the Plaintiffs' Motion to Join Defendants and to Remand Case [Doc. 10].

## I.    FACTUAL AND PROCEDURAL BACKGROUND

The Plaintiffs Robert B. Taft, Jr. ("Taft") and his company RTB, Inc. ("RTB") (collectively, "Plaintiffs")[1] were employed by the Defendant Siegwerk USA, Inc. ("Siegwerk") for several years until their termination on October 25, 2007. [Complaint, Doc. 1-2 at ¶¶10, 14]. During his employment with Siegwerk, Taft was assigned to conduct sales on behalf of Siegwerk with

---

[1] It is alleged that Robert B. Taft, Jr. is the sole shareholder of RTB, Inc. [Complaint, Doc. 1-2 at ¶2].

Siegwerk customer Oracle Packing Company ("Oracle"). [Id. at ¶30]. During his employment with Siegwerk, Taft established a separate agreement with Oracle pursuant to which Taft agreed to assist Oracle in the purchase of RJR Packaging in exchange for certain contractual rights. [Id. at ¶57].

On December 30, 2008, the Plaintiffs filed suit against Scott Dickman, Pinnacle Packaging Company, Inc., Oracle Packaging Company of North Carolina, Inc. and Oracle Flexible Packaging, Inc. (hereinafter "the Dickman Defendants") in the Superior Court for Mecklenburg County, asserting claims for tortious interference, unfair and deceptive trade practices, breach of a requirements contract, breach of agreement to negotiate, *quantum meruit*, and unjust enrichment ("Dickman I"). [Dickman I Complaint, Doc. 11-1]. After the case had been pending for more than one year, the Plaintiffs voluntarily dismissed Dickman I without prejudice on January 14, 2010. [Notice of Voluntary Dismissal, Doc. 11-2].

On October 22, 2010, the Plaintiffs commenced the instant action against Siegwerk and three Siegwerk managers, Terry Davis, Dan McDowell, and Jim Ross (collectively, "the Siegwerk Defendants") in the Superior Court for Polk County, asserting claims for wrongful termination, breach of contract, tortious interference, civil conspiracy, and unjust enrichment. [Complaint,

Doc. 1-2]. Notably, none of the Dickman I Defendants were named as parties to this lawsuit. The Siegwerk Defendants removed the instant action to this Court on January 5, 2011, on the basis of diversity jurisdiction. [Notice of Removal, Doc. 1].

On January 12, 2011, within one year of their voluntary dismissal of Dickman I, the Plaintiffs refiled their Complaint against the Dickman Defendants in Polk County ("Dickman II"). [Dickman II Complaint, Doc. 10-2].

On February 7, 2011, the Siegwerk Defendants filed their Answer to the Plaintiffs' Complaint in the instant action. [Doc. 5]. Thereafter, on March 17, 2011, the parties filed their Certificate of Initial Attorneys' Conference ("CIAC") form.[2] [Doc. 7]. The Court entered a Pretrial Order and Case Management Plan on March 23, 2011, setting a discovery deadline of October 1, 2011, a dispositive motions deadline of November 1, 2011, and a trial date on or after March 5, 2012. [Doc. 8].

On March 23, 2011, the Defendants propounded written discovery to the Plaintiffs. [Doc. 11-4]. Pursuant to the Court's Order of January 14, 2011, the Plaintiff's written discovery, which had been propounded with service of the Complaint, was deemed served upon issuance of the Pretrial Order. [See

---

[2]Notably, the parties agreed in the CIAC that all motions to amend the pleadings or to join parties would be filed by April 15, 2011. [Id.].

3

Doc. 4].³ On April 13, 2011, the parties designated Gary Hemric as mediator for this case. [Doc. 9].

On May 18, 2011, the Plaintiffs filed the instant motion, seeking to join the Dickman II Defendants and to assert the identical allegations and causes of action from the Dickman II complaint in the present case. [Doc. 10].

## II. ANALYSIS

The Court begins its analysis with 28 U.S.C. § 1447(e), which provides: "If after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court." The disposition of a motion for joinder is a matter within the district court's sound discretion. Mayes v. Rapoport, 198 F.3d 457, 462 (4th Cir. 1999). In exercising this discretion, a court must consider "all relevant factors," including: (1) "the extent to which the purpose of the amendment is to defeat federal jurisdiction"; (2) "whether the plaintiff has been dilatory in asking for amendment"; (3) "whether the plaintiff will be significantly injured if amendment is not allowed"; and (4) "any other factors bearing on the equities." Id. at 462-63 (citation omitted).

---

³As of the date of the filing for the motion for joinder, neither party had yet responded to this initial round of discovery. [See Doc. 10-1 at 5].

With respect to the first factor, examination of the chronology of the events and the Plaintiffs' asserted justification for the filing of the joinder motion indicates that the primary purpose of Plaintiffs' request is to defeat federal jurisdiction. The Plaintiffs filed their joinder motion after the case was removed but before any significant discovery had occurred, thereby eliminating the likelihood that the motion was occasioned by the discovery of new evidence. See Gum v. Gen. Elec. Co., 5 F.Supp.2d 412, 414 (S.D. W. Va. 1998) ("The amendments were filed soon after the case was removed and before significant discovery occurred, eliminating the argument Gum discovered facts previously solely within Defendants' possession."). The Plaintiffs admittedly were aware of all of the relevant facts to support their claims against the Dickman Defendants well before the present lawsuit was filed, as the Plaintiff already had brought an action against the Dickman Defendants in 2008. See Newman v. Motorola, Inc., 218 F.Supp.2d 783, 787 (D. Md. 2002) (denying motion to amend where plaintiffs made "no attempt ... to add the nondiverse defendant until after removal ... although the relevant facts ... were in the possession of the plaintiffs well before suit was filed"); Smith v. Computer Task Group, Inc., No. 1:06CV00907, 2007 WL 1447699, at *2 (M.D.N.C. May 10, 2007) (finding primary purpose of proposed

amendment was to destroy diversity where plaintiff chose not to name the proposed defendants in the action and did not seek to add them until after notice of removal was filed). Indeed, the Plaintiffs consciously chose not to include the Siegwerk Defendants in the Dickman I for "strategic reasons." [See Affidavit of John C. Scotchel, Jr. ("Scotchel Aff."), Doc. 10-3 at ¶6 (explaining that "Plaintiff Taft ... initially decided not to include the claims against the Siegwerk Defendants in the Dickman I case, for strategic reasons relating to discovery and possible settlement negotiations.")].

Plaintiffs have not asserted that joinder of the Dickman defendants is necessary to pursue any of the claims asserted in the instant action, to establish liability or for any other reason that must justify joinder. See Smith, 2007 WL 1447699, at *2 (denying motion to amend where plaintiff failed to show that joinder of additional defendants was required to maintain its claims already asserted in the action). The timing of the Plaintiffs' motion suggests that the sole purpose of the present motion for joinder is to destroy diversity jurisdiction. For these reasons, the Court concludes that the first factor weighs heavily in favor of denying the Plaintiffs' motion.

With respect to the second factor, it appears that the Plaintiffs have been dilatory in pursuing joinder. The Plaintiffs first filed their claims against

6

the Dickman Defendants in 2008. Well over a year later, they voluntarily dismissed that action without prejudice. Nine months after that dismissal, the Plaintiffs filed their present claims against the Siegwerk Defendants. Plaintiffs, however, did not re-assert their claims against the Dickman Defendants at that time. The argument that the Dickman claims were not repleaded due to Plaintiffs' purported difficulty in finding North Carolina counsel who was willing to represent them against all of these Defendants in one action [see Scotchel Aff., Doc. 10-3 at ¶¶8, 12] is simply not persuasive. Plaintiffs have had over three years since their separation from the Defendants to formulate their litigation strategy. While they contend that it has always been their intent to consolidate their claims into a single action [Id. at ¶6], their actions reveal that they repeatedly have chosen not to consolidate their claims despite having ample opportunity to do so. The Plaintiffs' dilatory conduct in seeking joinder also weighs heavily in favor of denying Plaintiffs' motion.

Consideration of the third factor, whether denial of the request would cause significant injury to the Plaintiffs, also weighs in favor of denying joinder. The Plaintiffs contend that they will be "penalized" and "severely harmed" in that they will face potentially inconsistent rulings and additional

7

expenses arising from pursuing parallel lawsuits. [See Scotchel Aff., Doc. 10-3 at ¶¶32-37]. The Plaintiffs' argument that having these lawsuits proceed in state and federal court may produce inconsistent verdicts is specious, as these lawsuits involve different defendants and therefore the claims and issues asserted in these lawsuits are not the same. As for the additional expense of maintaining two separate lawsuits, such harm is of the Plaintiffs' own making. See Smith, 2007 WL 1447699, at *3 ("Certainly, proceeding with similar trials in state court and federal court would be expensive and time consuming. However, this potential dilemma was created solely by Mr. Smith; he was aware of the potential liabilities of the individuals at the time he filed the state court action and elected not to name them as defendants.").

Finally, in considering all other factors which may bear on the equities, the Court is mindful of the diverse Defendants' interest in retaining the federal forum. See Gum, 5 F.Supp.2d at 415. Considering all of the above factors, and in the exercise of its discretion, the Court will deny the Plaintiffs' motion for joinder of non-diverse defendants. The Plaintiffs' request for remand of this case is therefore moot.

## O R D E R

**IT IS, THEREFORE, ORDERED** that the Plaintiffs' motion for joinder of non-diverse defendants [Doc. 10] is **DENIED**.

**IT IS FURTHER ORDERED** that the Plaintiffs' motion for a remand of this case [Doc. 10] is **DENIED AS MOOT**.

**IT IS SO ORDERED**.

Signed: September 26, 2011

Martin Reidinger
United States District Judge